IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MICHAEL MOKSHEFSKI**, Plaintiff, | : : : |
| v. | : :  CIVIL ACTION NO. 23-CV-2941 |
| **JEFFREY R. SMITH**, *et al.*, Defendants. | : : : : |

## MEMORANDUM

**GOLDBERG, J.**                                                                            September 10, 2025

Plaintiff Michael Mokshefski asserts claims pursuant to 42 U.S.C. § 1983 against several Defendants connected to the Berks County Prison. (ECF No. 1.) The only named defendants in this case are the Warden Jeffery Smith, the contracted medical provider PrimeCare, and PrimeCare's Chief Operating Officer Todd Haskin. (Id.; Defendant PrimeCare and Haskins' Statement of Undisputed Material Facts ("PrimeCare Facts"), ¶ 2.) Plaintiff also names several Joe Doe Defendants. (Id.) Plaintiff alleges that all named Defendants were deliberately indifferent to his serious medical needs, and Defendant Smith subjected him to excessive force, failed to protect him, and was otherwise deliberately indifferent to the unconstitutional acts of his subordinates. (Id.) Defendants PrimeCare, Haskin, and Smith all move for summary judgment on all claims against them. For the reasons explained herein, summary judgment will be entered on all claims.

**I.    FACTUAL AND PROCEDURAL HISTORY**[1]

---

1

1

On February 6, 2025, Defendants Todd Haskins and PrimeCare Medical filed a Motion for Summary Judgment. (ECF No. 61.) That same day, Defendant Jeffery Smith filed his Motion for Summary Judgment. (ECF No. 62.) Both Motions included a Statement of Undisputed Material Facts. On March 28, 2025, I received Plaintiff's "Motion in Opposition of Summary Judgment." (ECF No. 65.) I will construe Plaintiff's "Motion" as a response to Defendants' Motion for Summary Judgment. Neither Plaintiff's response, nor any other filing, included the required response to either Defendant's Statement of Undisputed Facts. (Id.) The following facts are therefore derived from Defendants' Statements of Undisputed Facts. [2]

On July 3, 2021, Plaintiff was charged with several offenses and taken to the Berks County Prison as a pretrial detainee. Defendant Smith's Statement of Undisputed Material Facts ("Smith Facts"), ¶¶ 8-9. While housed at the prison, on July 22, 2021, Plaintiff got into a fight with his cellmate, which resulted in Plaintiff being knocked to the ground. (Id. at ¶¶ 26-27, 30.) Correctional officers then entered his cell and restrained Plaintiff, who resisted orders and commands. (Id. at ¶¶ 30-33.) Reports from the incident indicate that only Corrections Officer Skalamera used force to gain control of Plaintiff. (Id. at ¶ 90.) There is no evidence that Officer Skalamera had previously used excessive force against an inmate or ever encouraged one inmate to attack another. (See id. at ¶ 91-92.) While Officers Columbus and Slobodzian were present during the altercation, they did not use force to restrain Plaintiff. (Id. at ¶ 93.) Nonetheless, there is no evidence that either officer had previously used excessive force against an inmate or encouraged one inmate to attack another. (Id. at ¶¶ 94-97.)

---

[2] Under my policies and procedures, "[t]he papers opposing a motion for summary judgment shall include as a separate exhibit a short and concise statement . . . [that] responds to the numbered paragraphs set forth in the moving party's Statement of Undisputed Facts." Policies and Procedures at 8–9, https://www.paed.uscourts.gov/judges-info/district-court-judges/mitchell-s-goldberg. Failure to dispute facts will result in those facts being deemed undisputed. Id., see also Fed. R. Civ. Pro. 56(e).

After being restrained, it was noted that Plaintiff was bleeding, and he was subsequently transported to medical, where PrimeCare Physician's Assistant Jesse Kirsch treated him. (Id. at ¶¶ 44-45.) Kirsch, examined Plaintiff's shoulder, observed no obvious dislocation, diagnosed Plaintiff with left shoulder strain, and ordered X-rays. (Id. at ¶ 46.) Kirsch also offered Plaintiff NSAIDs for the pain he was experiencing. (PrimeCare Facts at ¶ 21.) X-rays taken later that day showed no definite fracture or dislocation. (Smith Facts at ¶ 47.) The next day, PrimeCare Physician's Assistant Lipcsey reviewed Plaintiff's X-ray and informed Plaintiff that the X-ray showed no abnormalities. (PrimeCare Facts at ¶¶ 27-28.) At that time, Plaintiff expressed no medical concerns, and Plaintiff was given an ice pack and ibuprofen. (Smith Facts at ¶¶ 29, 48.) Plaintiff continued to be seen by medical personnel, including on August 6, 2021, and September 8, 2021, during which Plaintiff made no complaints about his left shoulder. (Id. at ¶ 49; PrimeCare Facts at ¶¶ 32, 35, 37-38.)

On October 17 and 19, 2021, Plaintiff submitted Sick Call Requests, claiming he could not lift his left arm above his shoulder and stating that the issue had persisted since the July 22, 2021, incident. (PrimeCare Facts at ¶¶ 39, 42.) On October 26, 2021, P.A. Lipcsey observed Plaintiff and arranged for a second set of X-rays, believing Plaintiff had a rotator cuff injury. (Smith Facts at ¶ 50.) She also prescribed Robaxin 500 mg and directed Plaintiff to continue stretching. (PrimeCare Facts at ¶ 48.) X-ray scans were completed on October 28, 2021, and showed a "noted fracture of the humeral head . . . with no dislocation [and] degenerative arthritic changes." (Smith Facts at ¶ 51; PrimeCare Facts at ¶ 49.) PA Lipcsey reviewed the X-ray on November 5, 2021, increased Plaintiff's dose of Robaxin, and ordered an orthopedic consultation. (PrimeCare Facts at ¶¶ 51, 53-54.)

On November 10, 2021, as a result of PA Lipcsey's referral, Plaintiff was seen by Dr. Ryan Michaels, an orthopedic specialist. (Smith Facts at ¶¶ 52-53; PrimeCare Facts at ¶ 55.) Dr. Michaels was not employed by PrimeCare, the prison, or any defendant. (Smith Facts at ¶ 52.) Dr. Michaels noted that surgical intervention was not a good option and recommended a CT scan to allow him to make necessary recommendations. (Smith Facts at ¶¶ 52-53; PrimeCare Facts at ¶ 55.) The CT scan was completed on December 20, 2021, and on January 11, 2022, Plaintiff was again evaluated by Dr. Michaels, who determined that surgery was necessary. (Smith Facts at ¶ 54; PrimeCare Facts at ¶¶ 57-59.) Surgery was then scheduled for February 2, 2022. (PrimeCare Facts at ¶ 61.)

PrimeCare staff informed Plaintiff that he should not take Coumadin or ibuprofen in advance of surgery, an instruction Plaintiff ignored. (Id. at ¶¶ 65-66.) As a result of Plaintiff continuing to take his medication Dr. O'Neil's Office, the Orthopedic surgeon set to operate on Plaintiff, decided to postpone Plaintiff's surgery. (Id. at ¶¶ 67-68.) Then, in consideration of Plaintiff's elevated blood pressure, Dr. O'Neil cancelled Plaintiff's surgery and indicated that surgery could not occur until Plaintiff's blood pressure was under control. (Id. at ¶¶ 69-74.) Dr. O'Neil was not employed by PrimeCare, the prison, or any defendant. (PrimeCare Facts at ¶¶ 67-73.) PA Lipcsey modified Plaintiff's medications to treat his elevated blood pressure. (Id. at ¶¶ 69-71, 75-76.)

From the time Plaintiff's surgery was cancelled to the date it was rescheduled, Plaintiff was evaluated multiple times by PrimeCare personnel. (Id. at ¶¶ 69-82.) Plaintiff's surgery was eventually rescheduled for March 30, 2022. (Id. at ¶ 84.) On March 7, 2022, PrimeCare personnel noted that Plaintiff's blood pressure was improving and cleared Plaintiff for surgery. (Id. at ¶¶ 85-86.) On March 23, 2022, Plaintiff was transferred to SCI Smithfield, who was notified of Plaintiff's scheduled surgery. (Id. at ¶¶ 87-88.) Neither Defendant Smith nor Haskins were aware of or

directly involved with Plaintiff's medical treatment. (Smith Facts at ¶ 60; PrimeCare Facts at ¶¶ 5-9.)

Following the July 3, 2021, altercation, Plaintiff's cellmate was found guilty of Fighting and was issued 20 days of disciplinary confinement as a result. (Smith Facts at ¶¶ 64-66.) Plaintiff was given the same penalty. (Id. at ¶¶ 67-68.) Plaintiff was found guilty of Fighting based in part on the bruising on his hands and the reports of officers who observed the incident. (Id. at ¶ 69.) Plaintiff never filed a grievance alleging that correctional officers, or Defendant Smith, directed his cellmates to attack him or used excessive force against him. (Id. at ¶¶ 81-82.)

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 states, in pertinent part:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. The court should state the reasons for granting or denying the motion on the record.

Fed. R. Civ. P. 56(a). "Through summary adjudication, the court may dispose of those claims that do not present a 'genuine dispute as to any material fact' and for which a jury trial would be an empty and unnecessary formality." Capitol Presort Servs., LLC v. XL Health Corp., 175 F. Supp. 3d 430, 433 (M.D. Pa. 2016). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. Id.

Summary judgment is appropriate against a party that "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will

5

bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The initial burden is on the moving party to adduce evidence illustrating a lack of genuine, triable issues. Hugh v. Butler Cnty. Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005). Once the moving party satisfies its burden, the non-moving party must, in rebuttal, present sufficient evidence of a genuine issue. Santini v. Fuentes, 795 F.3d 410, 416 (3d Cir. 2015). The court must then resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. Saldana v. Kmart Corp, 260 F.3d 228, 232 (3d Cir. 2001). There must be more than a scintilla of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts. Id. at 252. Moreover, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985) (citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)).

"[I]n order to survive a summary judgment motion in which the movant argues that there is an absence to support her case, the plaintiff must point to some evidence beyond her raw claim. . . ." Singletary v. Pa. Dep't of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001) (citing Celotex, 477 U.S. at 325). "[O]n a motion for summary judgment, a *pro se* plaintiff is not relieved of his obligation under Rule 56 to point to competent evidence in the record that is capable of refuting a defendant's motion for summary judgment." Edwards v. Rice-Smith, 606 F. Supp. 3d 151, 154 (E.D. Pa. 2022) (quoting Dawson v. Cook, 238 F. Supp. 3d 712, 717 (E.D. Pa. 2017)). "The party opposing summary judgment, whether *pro se* or counseled, must present evidence, through affidavits, depositions, or admissions on file, to show that there is a genuine issue for trial." Id. (quoting Watson v. Philadelphia Hous. Auth., 629 F. Supp. 2d 481, 485 (E.D. Pa. 2009)).

### III.   DISCUSSION

Count III of Plaintiff's Amended Complaint accuses Defendants PrimeCare, Haskins, and Smith of deliberate indifference to his serious medical needs in violation of his Eighth Amendment rights. He claims PrimeCare, Haskins, and Smith had direct knowledge of his injury and participated in denying and delaying his medical treatment for non-medical reasons. As no reasonable juror could conclude that any Defendant denied or delayed Plaintiff medical treatment for non-medical reasons, or was otherwise deliberately indifferent to his medical needs, summary judgment will be entered on this count.

Under the Eighth Amendment, prisoners must not be subject to "cruel and unusual punishment." Plaintiff, who is not a prisoner, is entitled to protection under the Fourteenth Amendment's Due Process Clause, which prevents pretrial detainees from being subjected to conditions that amount to punishment. Hubbard v. Taylor, 538 F.3d 229, 231 (3d Cir. 2008) (citing Bell v. Wolfish, 441 U.S. 520, 535 (1979)). To establish a violation of the Fourteenth Amendment for "the right to medical care, an individual must allege (1) a serious medical need and (2) acts or omissions by individuals that indicate a deliberate indifference to that need." Thomas v. City of Harrisburg, 88 F.4th 275, 281 (3d Cir. 2023) (internal citations omitted). The Third Circuit has applied this standard to claims under both the Eighth and Fourteenth Amendments. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). The PrimeCare Defendants have conceded, for the purposes of this Motion, that Plaintiff had a serious medical need. (ECF No. 61-1 at 11.) However, they argue that Plaintiff has failed to put forward evidence that they were deliberately indifferent to his medical need. I agree.

"It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute deliberate indifference." Rouse v. Plantier, 182 F.3d at

197 (internal quotations omitted). Instead, deliberate indifference requires "obduracy and wantonness which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk." Id. A Plaintiff must therefore demonstrate that a prison official was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Woloszyn v. Cnty. of Lawrence, 396 F.3d 314, 321 (3d Cir. 2005) (internal quotations omitted). The Third Circuit has found deliberate indifference where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." Rouse v. Plantier, 182 F.3d at 197. "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgment and to constitutionalize claims which sound in state tort law." United States ex rel. Walker v. Fayette County, 599 F.2d 573, 575 n.2 (3d Cir. 1979) (internal quotations omitted).

Here, Plaintiff points to no evidence that any Defendants were deliberately indifferent to his medical needs. The record instead demonstrates that Plaintiff was treated by PrimeCare medical professionals the day of his alleged injury. That same day, PrimeCare medical professionals ordered an X-ray, diagnosed Plaintiff, and treated him based on the information they had. While Plaintiff now alleges his medical needs related to his shoulder were ignored, there is no evidence that Plaintiff complained of a shoulder injury from July 21 to October 17, 2021, despite several interactions with PrimeCare personnel. When Plaintiff did complain of a shoulder injury, he was seen by PrimeCare personnel, and a second X-ray was ordered. To the extent that Plaintiff is complaining of a failure of PrimeCare to correctly diagnose his injury and act on it, at best Plaintiff's claim is one of negligence that does not rise to a constitutional claim.

To the extent that Plaintiff is arguing that PrimeCare improperly delayed his diagnosis or treatment for a non-medical reason, he has failed to provide any evidence by which a reasonable juror could so find. The undisputed facts show that, PrimeCare PA Lipcsey saw Plaintiff on October 26, 2021, as a result of his complaints of shoulder pain. At that time, PA Lipcsey ordered a second X-ray, which was completed on October 28, 2021. Lipcsey reviewed that X-ray on November 5, 2021, and ordered a consultation by an outside orthopedic specialist. PrimeCare personnel then acted on the recommendations of the outside specialist, including when rescheduling Plaintiff's surgery. Even if those recommendations are subject to question, no reasonable juror could find that PrimeCare demonstrated deliberate indifference by following the specialist's advice.

To the extent that Plaintiff is claiming that the time between his October 17th sick call request and November 5 referral constitutes a delay, he has failed to provide any evidence by which a reasonable juror could find that this delay was the result of non-medical reasons. Plaintiff offers no evidence that the delay was attributable to any "non-medical factors, such as a desire to punish [Plaintiff], to lessen [Defendants'] own workload, or to save [the prison] money." Miller v. Steele-Smith, 713 F. App'x 74, 80 (3d Cir. 2017). Even if a juror did find this delay unreasonable, that would at most support a finding of malpractice. As such, no reasonable juror could find that PrimeCare was deliberately indifferent to Plaintiff's medical needs in violation of the Constitution.

As there is insufficient evidence for a reasonable juror to find that PrimeCare personnel exhibited deliberate indifference to Plaintiff's medical needs, summary judgment is appropriate as to Defendant Haskins, who is only involved in this case as an Officer of PrimeCare.

Summary Judgment is also appropriate as to Defendant Smith. As the Third Circuit has explained, when an imprisoned person is under the care of medical experts, "a non-medical prison

official will generally be justified in believing that the prisoner is in capable hands." <u>Martinez-Perez v. Clark</u>, 2024 WL 4589228, at *2 (3d Cir. Oct. 28, 2024) (quoting <u>Spruill v. Gillis</u>, 372 F.3d 218, 236 (3d Cir. 2004)). Therefore, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." <u>Spruill</u>, 372 F.3d at 236. Plaintiff has put forward no evidence that Defendant Smith, as the prison warden, was informed of, or had any reason to be aware of, any mistreatment of Plaintiff. As such, summary judgment will be entered if favor of Defendant Smith as to Plaintiff's claim of deliberate indifference to his medical needs.

Plaintiff brings three additional claims against Defendant Smith. Plaintiff's Counts IV and V appear to allege that Defendant Smith subjected him to excessive force or was deliberately indifferent to excessive force being carried out against him. Count VI alleges that Defendant Smith was deliberately indifferent to multiple unnamed correctional officers arranging for Plaintiff's cellmate to attack him, thereby constituting a failure to protect. Plaintiff has failed to substantiate any of these claims with evidence that would allow a reasonable juror to find in his favor. As such, summary judgment is appropriate.

"Each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." <u>Jutrowski v. Twp. of Riverdale</u>, 904 F.3d 280, 290 (3d Cir. 2018). "Suits against high-level government officials must satisfy the general requirements for supervisory liability." <u>Wharton v. Danberg</u>, 854 F.3d 234, 243 (3d Cir. 2017). There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." <u>Barkes v. First Corr. Med., Inc.</u>, 766 F.3d 307, 316 (3d Cir. 2014), reversed on other grounds by <u>Taylor v. Barkes</u>, 575 U.S. 822 (2015).

First, a supervisor may be liable if he or she "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." Id. (internal citations omitted). "The plaintiff must (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure." Brown v. Muhlenberg Twp., 269 F.3d 205, 216 (3d Cir. 2001).

"Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." Barkes, 766 F.3d at 316. Additionally, a Plaintiff may establish supervisory liability by showing that a supervisor tolerated past ongoing misbehavior of subordinates. Argueta v. United States Immigration & Customs Enforcement, 643 F.3d 60, 72 (3d Cir. 2001).

The undisputed facts show that Warden Smith was not present at the time Plaintiff was allegedly subject to excessive force, and therefore could not have directly participated in the alleged excessive force. There is likewise no evidence that Defendant Smith encouraged Plaintiff's cellmate to attack him. Additionally, Plaintiff points to no evidence that Defendant Smith directed others to or even had knowledge of the correctional officers' actions. He has likewise failed to identify a supervisory practice or procedure that the Defendant Smith failed to employ which created an unreasonable risk of injury. Nor could a reasonable juror find that Defendant Smith tolerated past ongoing misbehavior by his subordinates. There is no evidence that any officer had

11

previously used excessive force, encouraged inmates to attack each other, or otherwise failed to protect inmates. As such, there is no evidence from which a reasonable juror could conclude that Defendant Smith was deliberately indifferent to the alleged conduct of his subordinates or could otherwise be subject to supervisory liability,[3] nor could they find that Defendant Smith himself subjected Plaintiff to excessive force. As such, summary judgment is appropriate as to these claims.

To review, summary judgment is appropriate as to all claims against Defendants PrimeCare, Haskins, and Smith.

An appropriate order follows.

**BY THE COURT:**

**/s/ Mitchell S. Goldberg**
**MITCHELL S. GOLDBERG, J.**

---

[3] Nothing in this opinion should be interpreted to mean that any correctional officer subjected Plaintiff to excessive force or failed to protect him.